UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| TRADITIONALIST AMERICAN | ) | |
| KNIGHTS of the | ) | |
| KLU KLUX KLAN, et al., | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. 4:12CV02085 AGF |
| | ) | |
| CITY OF DESLOGE, MISSOURI, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of Plaintiffs Frank Ancona and other members of the Traditionalist American Knights of the Ku Klux Klan (collectively, "TAK") for preliminary injunction.  (Doc. No. 3.)  Plaintiffs seek to enjoin Defendant, the City of Desloge, Missouri, from enforcing a city ordinance entitled "Prohibition Against Solicitation in the Streets," City of Desloge Code of Ordinances (the "Code") § 615.070, (the "Ordinance") until such time as this case is resolved on its merits.  Plaintiffs assert that enforcement of the Ordinance will violate their First Amendment free speech and assembly rights.  The Court held a hearing on the motion on December 20, 2012.  The parties agreed to proceed without testimony on the basis of stipulated facts (the "Stipulation"; Doc. No. 14) and exhibits, and presented argument.  For the reasons set forth below, Plaintiffs' motion for preliminary injunction will be granted.

## I. BACKGROUND

The Ordinance provides:

**PROHIBITION AGAINST SOLICITATION IN STREETS**

No peddler nor any other person, association, corporation or other entity shall be authorized to conduct any solicitation activities, or to occupy, use or operate in or upon any public highway, thoroughfare or street within the City of Desloge.

Code § 615.070.  (Def. Hearing Ex. D.)

The parties have stipulated that § 100.070 of the Code defines "street" to "mean and include any public way, highway, street, avenue, boulevard, parkway, alley or other public thoroughfare, and each of such words shall include all of them."  (Stipulation, ¶ 6.) Section 100.070 defines "public way" to include "any street, alley, boulevard, parkway, highway, sidewalk or other public thoroughfare."  *Id.* ¶ 7.  Section 100.070 further provides that the definitions set forth in the Code "shall be observed, unless it shall be otherwise expressly provided in any Section or ordinance, or unless inconsistent with the manifest intent of the Board of Aldermen, or unless the context clearly requires otherwise[.]"  *Id.* ¶ 5.  In addition, the Code mandates that "[t]he headings of the Chapters and Sections of this Code are intended as guides and not as part of this Code for purposes of interpretation or construction."  Code § 100.100.1.

An officer of the City of Desloge's police department "may arrest on view, and without a warrant, any person the officer sees violating or who such officer has reasonable grounds to believe . . . has violated any ordinance over which such officer has jurisdiction."  Mo. Rev. Stat. § 544.216. (Stipulation, ¶ 9.)  A violation of the Ordinance

is punishable by a fine of up to $500.00, imprisonment of up to 90 days, or both.  Code §
100.210.A.

The City adopted the Ordinance on or about June 14, 1999.  Defendant has filed
the affidavit of Greg Camp, the City Administrator, who was a member of the Board of
Alderman at the time the Ordinance was adopted.  He attests that the Ordinance was
adopted in response to concerns about traffic congestion and safety risks for motorists and
pedestrians "arising from individuals standing in or upon public streets to engage in
peddling, solicitation and similar activities, including the acts of handing out . . . handbills
and other materials in support of various organizations."  (Doc. No. 18-1, ¶5.)  He further
attests that the intended purpose of the Ordinance was to avoid such congestion and
disruption of traffic by prohibiting individuals and various organizations from peddling,
soliciting, or distributing handbills and leaflets in the streets.  *Id.*  No contrary evidence
was presented.  Since the City adopted the Ordinance, there is no dispute that it has been
enforced against all organizations, regardless of their stated purpose or message.  (Doc.
No. 18-2.)

Plaintiffs have regularly distributed handbills on public streets and sidewalks as
an efficient way of spreading their messages to a large number of persons living in, or
found in, an area in a short period of time.  (Stipulation, ¶ 10.)  The literature that
Plaintiffs propose to distribute is informational and does not request any contribution
from or immediate action by the recipient.  (Doc. No. 18-3; Pl. Hearing Exs. 4 - 7.)  The
leaflets cover such topics as the impact of Shariah law on the United States, risks to

"White Americans" from racially-motivated attacks, information about Klansmen, and the risks posed by methamphetamine.  *Id.*

Plaintiffs planned to distribute handbills in the City on October 27, 2012, and on unspecified dates thereafter.  (Stipulation, ¶ 11.)  In preparation for this solicitation activity, Ancona contacted the City and asked if he could approach individuals within stopped vehicles at the intersection of Desloge Drive and Oak Street in the City and distribute leaflets to them.  (Doc. No. 18-2, ¶4.)  Desloge Police Corporal Sean Roney advised Ancona that he could stand on the sidewalks or other areas not within the intersection to hand out his leaflets, could hand out the leaflets upon the City's sidewalks and could also display signs on the sidewalk, but for safety and traffic purposes, could not stand within the intersection.  *Id.*, ¶ 5.   Further, Corporal Roney advised Ancona that Plaintiffs could approach drivers and/or pedestrians in other public, private, or semi-private areas, including public parking lots near the intersection, and that Plaintiffs also could go from door to door to distribute leaflets on private property.  *Id.*

As a result of Ancona's discussions with the police department and City Administrator, Plaintiffs canceled their plans to distribute literature in Desloge on October 27, 2012, and rescheduled their plans for November 3, 2012.  (Stipulation, ¶ 14.) On October 29, 2012, Plaintiffs' attorney wrote to the City Administrator asserting that Plaintiffs' distribution of literature is not solicitation, and that the application of the Ordinance to prohibit the distribution of their literature on public streets and sidewalks would violate the First Amendment.  On October 30, 2012, the City's attorney responded

- 4 -

in writing, stating that the Ordinance would be enforced, that the term solicitation applies to activities "other than selling" and includes the distribution of handbills, and that Ancona would be allowed to go door to door to disseminate his literature. *Id.* ¶ 16.  After receiving a copy of the October 30, 2012 letter from the City's attorney, Plaintiffs canceled their plans to distribute literature in the City on November 3, 2012, and have refrained from distributing literature in the City, or planning to do so, on dates thereafter. *Id.* ¶ 17.

## II. <u>STANDARD OF REVIEW</u>

In determining whether to issue a preliminary injunction, the Court must consider the following four factors: (1) the threat of irreparable harm to the movants if the injunction were not granted; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movants will succeed on the merits; and (4) the public interest.  *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

"In a First Amendment case, . . . the likelihood of success on the merits is often the determining factor in whether a preliminary injunction should issue."  *Phelps-Roper v. Nixon*, 545 F.3d 685, 690 (8th Cir. 2008), *overruled on other grounds by Phelps-Roper v. City of Manchester, Mo.*, 697 F.3d 678 (8th Cir. 2012).  Because Plaintiffs are challenging a duly enacted ordinance, they must show that they are "likely" to prevail on the merits, not merely that they have "a fair chance" to prevail.  *Id.*  "'When a plaintiff has shown a likely violation of his or her First Amendment rights, the other requirements

for obtaining a preliminary injunction are generally deemed to have been satisfied.'"

*Minn. Citizens Concerned for Life, Inc. v. Swanson*, 692 F.3d 864, 870 (8th Cir. 2012)

(quoting *Phelps-Roper v. Troutman*, 662 F.3d 485, 488 (8th Cir. 2011) (per curiam)).

## III.  ARGUMENTS OF THE PARTIES

Plaintiffs assert that they are likely to succeed on the merits of their First

Amendment claim.  They assert a facial challenge to the Ordinance, arguing that it

applies to streets and sidewalks, and is overbroad, prohibiting expressive activity on

public streets, sidewalks, curbs and alleyways, and criminalizes speech on matters of

public concern within traditionally public forums.  In addition, Plaintiffs contend that the

Ordinance is not narrowly tailored to serve a significant governmental interest.  Plaintiffs

also assert that they will be irreparably harmed if an injunction does not issue because

their right to free expression will be chilled.  Finally, Plaintiffs claim that the public

interest and the balancing of the equities weigh in their favor because the Ordinance

infringes on the First Amendment rights of persons seeking to express their views by

distributing literature on public streets.

In response, Defendant argues that while the Ordinance applies to leafletting, it

prohibits such conduct only in the street, and not on curbs or sidewalks.  As evidence of

the Board's intent to this effect, Defendant relies on Camp's affidavit.  Consistent with

this interpretation, Defendant asserts that it does not intend to enforce the Ordinance to

prevent Plaintiffs from handing out leaflets when standing on sidewalks or curbs, or in

parking lots, or from delivering leaflets to private homes.  Defendant contends that the

Ordinance, so construed, therefore does not unreasonably limit alternative avenues of communication.  Thus, it is improbable that Plaintiffs will succeed on the merits. Defendant also contends that the Ordinance is narrowly tailored to serve substantial governmental interests, namely, preventing traffic congestion and safety risks to motorists and pedestrians.  Defendant also asserts that it is unlikely Plaintiffs will be harmed by continued enforcement of the Ordinance, as they have ample alternative means available for the dissemination of their leaflets.  Defendant further contends that there is a significant likelihood that the City and its citizens would be harmed if enforcement of the Ordinance were enjoined, as traffic congestion and safety risks to motorists and pedestrians will result.

## IV.  <u>DISCUSSION</u>

The First Amendment provides that the government "shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the Government for redress of grievances."  U.S. Const. Amend. I.  These protections, at the core of our democratic society, are applicable to the states, *Gitlow v. New York*, 268 U.S. 652, 666 (1925), and include the ability to petition the government, to follow one's own religious beliefs, and to associate with others.  *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 647 (2000); *Wallace v. Jaffree*, 472 U.S. 38, 48-49 (1985).  The distribution of handbills and leaflets is expressive conduct that falls within the core protections of the First Amendment, *Members of City Council of City of Los Angeles v.*

- 7 -

*Taxpayers for Vincent*, 466 U.S. 789, 808 (1984) (citing *Schneider v. State of NJ, Town of Irvington*, 308 U.S. 147 (1939)), and our nation has a "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open," *N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 270 (1964).

Under the First Amendment, citizens have a "right to attempt to persuade others to change their views" which "may not be curtailed simply because the speaker's message may be offensive to his audience." *Hill v. Colorado*, 530 U.S. 703, 716 (2000). But that right is not absolute. Government may restrict disruptive and unwelcome speech to protect unwilling listeners when there are other important interests at stake. *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 208-09 (1975). Here, "[n]o one disputes [TAK's] right to say [its] piece, repugnant though [its] message be." *See McCalden v. Cal. Library Ass'n*, 955 F.2d 1214, 1230 (9th Cir. 1992). It is the scope of the City's authority to restrict that right in the interests of public safety and convenience that is the crux of the question presented by this motion.

### A. <u>Standing</u>

Although the parties have not explicitly raised the issue, questions of justiciability, such as standing, are necessary considerations where federal jurisdiction is invoked. Therefore, the Court will briefly address the question of Plaintiffs' standing to mount a facial challenge to the Ordinance.

A party invoking federal jurisdiction must show a right to assert a claim in federal court by showing injury in fact, causation, and redressability. *Mo. Roundtable for Life v.*

*Carnahan*, 676 F.3d 665, 672 (8th Cir. 2012).  To demonstrate injury in fact, a party must show "'an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical.'"  *Id.* (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal citations and quotation omitted).  "[A] party need not 'expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights.'"  *Id.* (quoting *Steffel v. Thompson*, 415 U.S. 452, 459 (1974)).  But "he must show that his injury is more than 'imaginary or speculative.'"  *Id.* (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

A party can demonstrate a cognizable injury by showing that its First Amendment rights have been chilled by harm to reputation or threat of criminal prosecution.  *Id.* at 673; *see also Babbitt*, 442 U.S. at 298.  "Self-censorship based on mere allegations of a subjective 'chill' resulting from a statute is not enough to support standing, *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972), and 'persons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs.'"  *281 Care Comm. v. Arneson*, 638 F.3d 621, 629 (8th Cir. 2011) (quoting *Babbitt*, 442 U.S. at 298).  "The relevant inquiry is whether a party's decision to chill his speech in light of the challenged statute was objectively reasonable."  *Id.* at 629 (citation omitted).  "Reasonable chill exists when a plaintiff shows 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by [the] statute,

and there exists a credible threat of prosecution.'"  *Id.* at 629 (quoting *Babbitt*, 442 U.S. at 298).

Here, Defendant has neither established a long history of disuse nor produced a clear statement by proper authorities that they do not intend to enforce the Ordinance.  *See United Food & Commercial Workers Int'l Union v. IBP*, *Inc.*, 857 F.2d 422, 429 (8th Cir. 1988) (concluding that state officials' representation that they had "no present plan" to enforce a statute did not divest plaintiff of standing to challenge the statute because the state's position was not binding and could change).

Although the City has indicated that it would allow Plaintiffs to distribute their handbills in certain restricted public locations such as the sidewalks, curbs, and on semipublic and private property, the Court is satisfied that Plaintiffs can show an injury in fact sufficient to confer standing.  While Plaintiffs may not have exposed themselves to actual arrest or prosecution, they have demonstrated that the decision to chill their speech and refrain from distributing handbills in the City is "objectively reasonable."  *281 Care Committee*, 638 F.3d at 629 (citation omitted).  In addition, Plaintiffs can show an intention to engage in protected speech proscribed by the Ordinance, and, despite the City's assertion that it would not enforce the Ordinance if Plaintiffs did not enter into the intersection, a credible threat of prosecution exists.  *See id.*  Therefore, the Court is satisfied that Plaintiffs have standing to raise a First Amendment challenge to the Ordinance.

## B.  Likelihood of Success on the Merits

### 1.  Activity Protected under the First Amendment

Plaintiffs' proposed activities are subject to protection under the First Amendment.

They seek to distribute handbills expressing their views on the public streets and

sidewalks of the City.  The Ordinance affects activity on the City's streets, and streets are

"quintessential public forums."  *Perry Ed. Ass'n*, 460 U.S. at 45 (quoting *Hague v.*

*Comm. for Indus. Org.*, 307 U.S. 496, 515 (1939) ("streets . . . have immemorially been

held in trust for the use of the public and . . . have been used for purposes of assembly,

communicating thoughts between citizens, and discussing public questions")).  The

Supreme Court has "repeatedly referred to public streets as the archetype of a traditional

public forum," noting that "'[t]ime out of mind' public streets and sidewalks have been

used for public assembly and debate."  *See Snyder v. Phelps*, 131 S. Ct. 1207, 1218

(2011) (quoting *Frisby v. Schultz*, 487 U.S. 474, 480 (1988)).  "[O]ne who is rightfully on

a street which the state has left open to the public carries with him there as elsewhere the

constitutional right to express his views in an orderly fashion.  This right extends to the

communication of ideas by handbills and literature as well as by the spoken word."

*Jamison v. State of Tex.*, 318 U.S. 413, 416 (1943).

Plaintiffs' speech on such topics as race relations, the role of religious law in

government, and social problems related to methamphetamine production and use,

qualifies as speech on matters of public concern.  *See Snyder*, 131 S. Ct. at 1215 (holding

that "[s]peech deals with matters of public concern when it can be fairly considered as

relating to any matter of political, social, or other concern to the community, or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public.") (internal citations omitted).  That members of the public may find Plaintiffs' opinions objectionable, or even repugnant, does not alter this result.  "The arguably 'inappropriate or controversial character of a statement is irrelevant to the question of whether it deals with a matter of public concern.'"  *Id*. at 1216 (quoting *Rankin v. McPherson*, 483 U.S. 378, 387 (1987)).

Defendant asserts that Plaintiffs' distribution of leaflets amounts to "solicitation" and points out that courts have upheld complete bans on solicitation on public streets as not inconsistent with the First Amendment.  *See, e.g.*, *Int'l Soc'y for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge*, 876 F.2d 494, 498-500 (5th Cir. 1989) (upholding a complete ban on the use of streets for solicitation).  The Court does not agree that Plaintiffs' conduct constitutes solicitation as used in *Int'l Soc'y for Krishna Consciousness*.  As the court there recognized, "solicitation and selling require 'stopping [individuals] momentarily or for longer periods as money is given or exchanged for literature.'"  *Id*. at 498 (quoting *Heffron v. Int'l Soc'y for Krishna Consciousness, Inc.*, 452 U.S. 640, 755 (1981)).  There is no indication in the record before the Court that Plaintiffs have engaged in or wished to engage in such exchanges.

## 2.  Facial Challenge as Overbroad

In a facial challenge to the validity of a law under the First Amendment, the "law may be invalidated as overbroad if 'a substantial number of its applications are

- 12 -

unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" *United States v. Stevens*, 130 S.Ct. 1577, 1587 (2010) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449 n.6 (2008)).  The party challenging the law need not necessarily introduce admissible evidence of overbreadth, but generally must at least "describe the instances of arguable overbreadth of the contested law." *Wash. State Grange*, 552 U.S. at 449 n.6.  "[B]roadly written statutes may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected." *City Council of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 798 (1984).

"The first step in overbreadth analysis is to construe the challenged statute; it is impossible to determine whether a statute reaches too far without first knowing what the statute covers." *United States v. Williams*, 553 U.S. 285, 293 (2008).  Second, based on the reach of the statute as determined in the first step, a court must determine whether it law "criminalizes a substantial amount of protected expressive activity." *Id.* at 297.

(a)  Construction of the Ordinance

Plaintiffs assert that the Ordinance is overbroad because it encompasses expressive activities apart from solicitation and bans such activities on public streets, sidewalks , medians, curbs, and alleyways within the City.  Defendant contends that the Ordinance only restricts Plaintiffs from standing in the streets at intersections to distribute their leaflets.

As noted above the Ordinance provides:

**"PROHIBITION AGAINST SOLICITATION IN THE STREETS**

No peddler nor any other person, association, corporation or other entity shall be authorized to conduct any solicitation activities, or to occupy, use or operate in or upon any public highway, thoroughfare or street within the City of Desloge."

Code § 615.070.

The plain language of the Ordinance prohibits "person[s], association[s], corporation[s], or entit[ies] from conducting solicitation activities or from "occupy[ing], us[ing] or operat[ing] in or upon any public highway, thoroughfare or street."  The language of the Ordinance therefore reaches activities other than solicitation, such as the expressive activities contemplated by Plaintiffs.[1]   Although the heading references only solicitation, the Code states that headings are to be used for guidance only, and not for interpretation.  Moreover, the broad sweep of the language, proscribing entities from occupying, using or operating in or upon the streets, appears to cover leafletting activities.  Indeed, Defendant, itself, construes the Ordinance to cover informational leafletting.

In addition, as noted above, the Code defines the term "street," to include public ways, highways, avenues, boulevards, parkways, alleys, and other public thoroughfares.  Code § 100.070.  "Public way" is, in turn, defined in the Code to include "sidewalk or other public thoroughfare."  *Id.*

---

[1]   As Plaintiffs assert in their memorandum, to the extent Defendant defines "solicitation" to include leafletting, the Ordinance may be impermissibly vague.

Defendant contends that it did not intend to include sidewalks as areas of restricted activity under the Ordinance and that the definitions should not be used to alter this intention.  Defendant cites to the provision of the Code that states that definitions included in the Code are not to be construed in a manner "inconsistent with the manifest intent of the Board of Alderman."

The Court finds this argument unpersuasive.  Even if the Court accepts the affidavit offered by Defendant attesting to the circumstances surrounding the passage of the Ordinance as evidence of the intent of the Board of Aldermen regarding its scope, such intent is not "manifest"; it cannot be ascertained from the face of the Ordinance, or otherwise independently determined by a person or entity attempting to comply with its requirements.  Nor is such intent evidenced by present assurances that the City does not intend to enforce the Ordinance with respect to Plaintiffs' activities on sidewalks, curbs, or in parking lots.  At the hearing, Defendant could cite no case law for the proposition that those seeking to exercise their First Amendment rights must first contact city officials to obtain their interpretation of their statute, nor any case law stating that an overly broad statute may be saved by resort to an affidavit by a drafter that the scope was intended to be more narrow.

Although the heading of the Ordinance–"Prohibition Against Solicitation in the Streets"–might be deemed evidence of an intent to apply the Ordinance only to streets, such an approach is problematic.  First, as discussed above, the Code itself declares that the heading cannot be used to construe the Ordinance.  Code § 100.100.1 (providing that

"[t]he headings of the Chapters and Sections of this Code are intended as guides and not as part of this Code for purposes of interpretation or construction").  Second, the heading uses the term "streets," a defined term that is subject to delineation by reference to the definitions in the Code.  Further, in addition to streets, the Ordinance itself specifically references "public highway" and "thoroughfare," terms which are specifically included in the definition of "public way," which, as stated above, also includes "sidewalk."[2]

On the basis of the foregoing, the Court concludes that Plaintiffs are likely to show that the Ordinance on its face applies to expressive conduct undertaken on sidewalks, curbs, medians, and alleyways, as well as streets.

(b) Criminalization of Substantial Protected Activity

Having construed the Ordinance, the Court next must consider "whether the [Ordinance], as [the Court] ha[s] construed it, criminalizes a substantial amount of protected expressive activity." *Williams*, 553 U.S. at 297.  The Court is guided by the Supreme Court's admonition that in traditional public forums "the government's ability to permissibly restrict expressive activity is very limited." *Grace,* 461 U.S. at 177.

Here, violation of the Ordinance results in the imposition of a fine or imprisonment.  The City makes no attempt to defend the restriction of speech on sidewalks.  It defended its prohibition of Plaintiffs' use of all streets for expression only

---

[2]  The Court is also uncertain what is intended by use of the language "in or upon" any public street.  Presumably, "upon" means something different than "in."  In the dictionary, "upon" is defined to mean "on." *Merriam-Webster's Collegiate Dictionary*, 10th Ed.  A prohibition against leafletting "in" or "on" the street could easily be construed to include standing on the curb or median.

by referencing the three busiest intersections, and offering its assumption that the time it would take the driver of a stopped vehicle to take or refuse a handbill would disrupt traffic.  Given the longstanding precedent establishing that the distribution of leaflets and handbills on public sidewalks is protected activity under the First Amendment, *Schneider v. State of NJ*, 308 U.S. 147, 163-64 (1939), the Court is satisfied that Plaintiffs will likely be able to show that the Ordinance is overbroad because it criminalizes a substantial amount of protected activity.

### 3.  Narrowly Tailored

The constitutionality of an ordinance regulating the exercise of protected speech in a public forum depends in large part on whether it is content based, *R.A.V. v. City of St. Paul*, 505 U.S. 377, 383-84 (1992), or content neutral, *Frisby,* 487 U.S. at 481.  Here, the parties agree, as does the Court, that the Ordinance is a content neutral regulation.  Such regulations are subject to intermediate scrutiny, and "must be 'narrowly tailored to serve a significant governmental interest' and allow for 'ample alternative channels for communication."  *Phelps-Roper v. City of Manchester, Mo.,* 697 F.3d 678, 686 (8th Cir. 2012) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)); *see also Frisby*, 487 U.S. at 481.  "[A] government purpose to control or prevent activities constitutionally subject to state regulation may not be achieved by means which sweep unnecessarily broadly and thereby invade the area of protected freedoms."  *NAACP v. Ala. ex rel. Flowers*, 377 U.S. 288, 307 (1964).

- 17 -

Here, the City will bear the burden of producing evidence in support of its proffered justification for the restriction, including objective evidence showing that the restriction serves the interests asserted. *See Horina v. City of Granite City, Ill.*, 538 F.3d 624, 633 (7th Cir. 2008); *accord Phelps-Roper v. Koster*, 734 F. Supp. 2d 870, 878 (W.D. Mo. 2010). In the present record, Defendant offers no evidence demonstrating that a complete ban on the use of its streets for expressive activity is justified, suggesting only that in the past, solicitation at certain intersections caused traffic congestion. The Ordinance is not, however, limited to solicitation activities, nor is it tailored to particular times, problematic locations, or circumstances under which the City might have legitimate concerns about traffic safety and congestion.

In addition, legal precedent binding upon this Court indicates that Defendant will find it difficult to demonstrate that the Ordinance is narrowly tailored to accomplish its proffered justifications. *See Schneider*, 308 U.S. at 163 (stating that "the streets are natural and proper places for the dissemination of information and opinion; and . . . the exercise of . . . liberty of expression in appropriate places [may not be] abridged on the plea that it may be exercised in some other place"). The Court notes that the Ordinance is, in essence, a complete ban on the use of streets for the distribution of leaflets, and is therefore much broader than similar bans that the Eighth Circuit has held to be insufficiently tailored to their stated purposes. *See Krantz v. City of Fort Smith*, 160 F.3d 1214 (8th Cir. 1998) (striking down an ordinance banning the placement of leaflets on unoccupied, parked vehicles).

On the basis of the foregoing, the Court concludes that Plaintiffs also are likely to succeed on their claim that the Ordinance is not narrowly tailored to serve a significant government interest.

### C. **The Remaining Dataphase Factors**

When, as here, Plaintiff has shown a likely violation of his First Amendment rights, the other preliminary injunction requirements–irreparable harm, the balance of harms, and the public interest–are generally deemed to have been satisfied. *See Swanson*, 692 F.3d at 870. "[L]oss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Because Plaintiffs have established they are likely to succeed on the merits, they also have established irreparable harm as the result of the deprivation of their First Amendment rights. *See, e.g., Marcus v. Iowa Pub. Television*, 97 F.3d 1137, 1140-41 (8th Cir. 1996). By contrast, the Court sees little or no harm to Defendant, which has no significant interest in the enforcement of a likely unconstitutional ordinance.

Similarly, "[t]he balance of equities . . . generally favors the constitutionally-protected freedom of expression." *Nixon*, 545 F.3d at 690. Moreover, "[i]t is always in the public interest to protect constitutional rights," *id.*, and the public interest is served by preventing the likely unconstitutional enforcement of the challenged Ordinance while this case is considered on the merits. *See Doe v. South Iron R-1 School Dist.*, 453 F. Supp.2d 1093, 1103 (E.D. Mo. 2006).

## V.  **BOND**

Pursuant to Rule 65(c) the Court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."

Plaintiffs assert that no bond should be required here, as Defendant will suffer no financial harm if wrongfully enjoined.  Defendant requests that Plaintiffs post a bond in the amount of $50,000, asserting that it has incurred attorney's fees and costs in excess of $7,000 to date, and is likely to incur in excess of $50,000 in fees and additional costs as this case proceeds to a final resolution.  Defendant further argues that a bond in this amount is fair and just because "the remedy sought in this injunction is the suspension of an ordinance which was passed by the City's Board of Alderman in response to the public safety of its citizens and the orderly flow of traffic on its streets."  (Doc. No. 23.)

The Court is afforded wide discretion in setting the amount of the bond, *N. States Power Co. v. Fed. Transit Admin*., 270 F.3d 586, 588 (8th Cir. 2001), but abuses its discretion if it sets the bond "because of an improper purpose, or does not require an appropriate bond, or fails to articulate appropriate findings that support its determinations." *Ranchers Cattlemen Action Legal Fund*, 566 F. Supp. 2d 995, 1008 (D.S.D. 2008) (citing *Hill v. Xyquad, Inc.*, 939 F.2d 627, 632 (8th Cir. 1991)).

Upon consideration of the arguments raised by the parties, the Court concludes that a bond in the amount requested by Defendant would be excessive and improperly predicated upon a speculative estimate of Defendant's possible attorney's fees.  Defendant

does not offer, and the Court is unaware of, any authority for its statement that its attorney's fees would be a proper measure of its damages in the event that it is wrongfully enjoined.  Taking into account Plaintiffs' status a not-for profit entity, the Court will require a bond in the amount of $100.

## CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiffs have established the requirements necessary for the issuance of a  preliminary injunction enjoining Defendants from enforcing the Ordinance pending the resolution of Plaintiffs' First Amendment claim.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Preliminary Injunction (Doc. No. 3) is **GRANTED**.  Defendant, The City of Desloge, Missouri, is preliminarily enjoined from enforcing City of Desloge Code of Ordinances § 615.070, during the pendency of this action.

**IT IS FURTHER ORDERED** that Plaintiffs must provide a $100 bond as surety in accordance with the requirements of Federal Rule of Civil Procedure 65(c).

AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 27th Day of December, 2012.

- 21 -